# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALFRED PAUL GALAZ,<br><br>       Petitioner,<br><br>       vs.<br><br>C. HARRISON, Warden,<br><br>       Respondent. | 1:04-cv-05383-TAG HC<br><br>ORDER DENYING RESPONDENT'S MOTION TO DISMISS<br>(Doc. 20)<br><br>ORDER REQUIRING RESPONDENT TO SUBMIT ANSWER<br><br>ORDER SETTING BRIEFING SCHEDULE |

Petitioner is a state prisoner proceeding pro se and in forma pauperis with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

### PROCEDURAL HISTORY

On March 1, 2004, Petitioner filed the instant petition for writ of habeas corpus in the United States District Court for the Eastern District of California, Sacramento Division. (Doc. 1). On March 5, 2004, by order of the Court, the case was transferred to the United States District Court for the Eastern District of California, Fresno Division. (Doc. 3). On April 6, 2004, this Court ordered Petitioner to show cause why his petition for writ of habeas corpus should not be dismissed for filing the petition outside the one-year statute of limitations period. (Doc. 7). The Court also ordered Petitioner to file an amended petition. (Id.).

On May 3, 2004, Petitioner filed an amended petition. (Doc. 9). On May 5, 2004, Petitioner filed a response to the order to show cause why the petition should not be dismissed.

(Doc. 10). On June 7, 2004, the Court issued a report and recommendation which recommended dismissal of Petitioner's petition as untimely. (Doc. 11). Petitioner filed objections to the report and recommendation on July 6, 2004, asserting equitable tolling because his mental incapacity had precluded him from timely filing his petition. (Doc. 12). Specifically, Petitioner claimed that for a period of time immediately preceding the filing deadline for his federal petition, he had been on a "suicide watch" in the prison and unable to work on his petition. (Id.).

On August 26, 2004, the Court ordered Petitioner to provide further documentation to support his claims regarding his mental condition, and expressly ordered the record expanded to include such supplemental documentation. (Doc. 13). Petitioner complied on December 6, 2004. (Docs. 15 & 16). In light of Petitioner's additional documentation, the Court discharged the order to show cause, vacated the earlier report and recommendation, and ordered Respondent to file a response. (Docs. 17 & 18). The Court construed Petitioner's supplemental documentation as a request to supplement the petition and granted the request. (Doc. 18). On March 2, 2005, Respondent filed the instant Motion to Dismiss, claiming that Petitioner had filed his federal petition beyond the one-year statute of limitations. (Doc. 20). Petitioner opposed the motion to dismiss with documents again alleging that equitable tolling should apply because of his prior mental incapacity. (Doc. 26). Respondent filed a reply to Petitioner's opposition (Doc. 29), and Petitioner filed a response to Respondent's reply. (Doc. 30).

## DISCUSSION

A.  Procedural Grounds for Motion to Dismiss.

On March 2, 2005, Respondent filed a Motion to Dismiss the petition as being filed outside the one-year limitations period prescribed by Title 28 U.S.C. § 2244(d)(1). (Doc. 20.) Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of

the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); Hillery v. Pulley, 533 F.Supp. 1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

In this case, Respondent's Motion to Dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s one year limitation period. Because Respondent's Motion to Dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review Respondent's Motion to Dismiss pursuant to its authority under Rule 4.

  B. <u>The Statute Of Limitations Under the AEDPA.</u>

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 2063 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997). The original petition in this case was filed on March 1, 2004 (Doc. 1), and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). As amended, § 2244, subdivision (d) reads:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
>  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

        (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

In this case, the petition for review was denied by the California Supreme Court on November 20, 2002. (Doc. 20, Lodged Document ("LD") 4). Thus, direct review would conclude on February 18, 2003, when the 90-day period for seeking review in the United States Supreme Court expired. Barefoot v. Estelle, 463 U.S. 880, 887 (1983); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir.1999); Smith v. Bowersox, 159 F.3d 345, 347 (8th Cir.1998). Petitioner would have one year from February 18, 2003, or until February 18, 2004, absent applicable statutory or equitable tolling, within which to file his federal petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1).

Respondent assumes, for purposes of the Motion to Dismiss, that the "mailbox rule," which provides that a federal habeas petitioner's petition is deemed filed on the date a petitioner delivers it to prison authorities, Houston v. Lack, 487 U.S. 266 (1988), would result here in a filing date of February 25, 2005, i.e., seven days after the one-year statute had expired. (Doc. 20, p. 3, fn 2).[1] It therefore being undisputed that, absent any form of tolling, the petition was filed outside the one-year period required by the AEDPA, the only questions for this Court are whether any form of tolling applies to bring Petitioner within the one-year period.

---

[1] In Houston, the United States Supreme Court held that a pro se habeas petitioner's notice of appeal is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk. Houston, 487 U.S. at 276. The rule is premised on the pro se prisoner's mailing of legal documents through the conduit of "prison authorities whom he cannot control and whose interests might be adverse to his." Miller v. Sumner, 921 F.2d 202, 203 (9th Cir. 1990); see, Houston, 487 U.S. at 271, 108 S.Ct. at 2382. The rule is used to assess the timeliness of federal habeas filings under the AEDPA limitations period; however, the Ninth Circuit has yet to address whether the rule applies to the tolling provision of § 2244(d)(2).

4

C. Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2).

Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the one-year limitation period. 28 U.S.C. § 2244(d)(2). In Nino v. Galaza, the Ninth Circuit held that the "statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge."[2] Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), *cert. denied,* 120 S.Ct. 1846 (2000); see, also, Taylor v. Lee, 186 F.3d 557 (4th Cir. 1999); Barnett v. Lemaster, 167 F.3d 1321, 1323 (10th Cir. 1999). The Court reasoned that tolling the limitations period during the time a petitioner is preparing his petition to file at the next appellate level reinforces the need to present all claims to the state courts first and will prevent the premature filing of federal petitions out of concern that the limitation period will end before all claims can be presented to the state supreme court. Id. at 1005. However, the limitations period is not tolled for the time such an application is pending in federal court. Duncan v. Walker, 533 U.S. 167, 181-182 (2001).

Here, Petitioner filed three post-conviction petitions in state court; however, the earliest of these was filed on May 2, 2004, several months *after* the limitations period would have *already* expired, unless extended by some form of tolling. As will be explained infra, the Court concludes that Petitioner is entitled to equitable tolling for a period of only seven days. This, however, is not sufficient to extend the one-year period from February 18, 2004 until May 2, 2004, and therefore Petitioner cannot avail himself of any *statutory* tolling resulting from his state court habeas proceedings. This is so because the limitations period, even if extended by seven days, would have *already* expired at the time petitioner filed the *first* of his three state

---

[2] In California, the Supreme Court, intermediate Courts of Appeal, and Superior Courts all have original habeas corpus jurisdiction. See, Nino v. Galaza, 183 F.3d 1003, 1006, n. 2 (9th Cir. 1999), *cert. denied*, 120 S.Ct. 1846 (2000). Although a Superior Court order denying habeas corpus relief is non-appealable, a state prisoner may file a new habeas corpus petition in the Court of Appeal. Id. If the Court of Appeal denies relief, the petitioner may seek review in the California Supreme Court by way of a petition for review, or may instead file an original habeas petition in the Supreme Court. See, id.

5

court habeas petitions. Therefore, none of Petitioner's collateral challenges had any statutory tolling consequences for purposes of the one-year limitation in the AEDPA. Green v. White, 223 F.3d 1001, 1003 (9th Cir.2000) (Petitioner is not entitled to tolling where the limitations period has already run prior to filing state habeas proceedings); see Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir.2000)(same); Jackson v. Dormire, 180 F.3d 919, 920 (9th Cir. 1999)(petitioner fails to exhaust claims raised in state habeas corpus filed after expiration of the one-year limitations period.).

      D.  Equitable Tolling Under the AEDPA.

Having concluded that Petitioner's state collateral proceedings did not entitle him to any statutory tolling, the only remaining question is whether Petitioner is entitled to equitable tolling. Petitioner asserts two grounds for equitable tolling: (1) various prison "lockdowns" that precluded him from access to the prison law library, and (2) a period of seven days from January 30, 2004 until February 5, 2004, during which Petitioner was held on a "suicide watch" when he slashed his throat after an argument with his cellmate. (Doc. 26).[3] For the reasons set forth below, the Court rejects any equitable tolling for the prison lockdowns; however, the Court does find that equitable tolling should apply to the seven day period Petitioner was on "suicide watch."

      1.  General Principles.

The limitations period is subject to equitable tolling if "extraordinary circumstances beyond a prisoner's control" have made it impossible for the petition to be filed on time. Calderon v. U.S. Dist. Ct. (Kelly), 163 F.3d 530, 541 (9th Cir. 1998), *cert. denied*, 526 U.S. 1060 (1997); Calderon v. United States District Court for the Central District of California (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997)(noting that "[e]quitable tolling will not be available in most cases, as extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's control make it impossible to file a petition on time"). "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling

---

[3] In addition to the seven-day period he was on a suicide watch from January 30, 2004-February 5, 2004, Petitioner also requests equitable tolling for the five-day suicide step-down from his discharge on February 5, 2004, until February 9, 2004. (Doc. 12, p. 4; Doc. 26, pp. 4-5). The Court addresses these additional four days elsewhere in this Order.

of the statute of limitations may be appropriate." Lott v. Mueller, 304 F.3d 918, 922 (9th Cir. 2002) (quoting Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999)).  In order to win equitable tolling, a prisoner must demonstrate that "extraordinary circumstances beyond [his] control" made it "impossible to file a petition on time." (Beeler), 128 F.3d at 1288.  In Allen v. Lewis, 255 F.3d 798, 801 (9th Cir. 2001), the Ninth Circuit concluded that the petitioner "must show that the 'extraordinary circumstances' were the but-for and proximate cause of his untimeliness." Recently, the Ninth Circuit reaffirmed this rule in Espinoza-Matthews v. California, 432 F.3d 1021, 1026 (9th Cir. 2005).  In that case, the Court pointed out that the determination vis-a-vis equitable tolling is "highly fact-defendant" and that the petitioner "bears the burden of showing that equitable tolling is appropriate." Id.

At the same time, the Ninth Circuit noted the United States Supreme Court's decision in Pace v. DiGuglielmo, 544 U.S.408, 125 S.Ct. 1807, 1814 (2005), in which the High Court framed the equitable tolling standard "in less absolute terms":

> "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."

Espinoza-Matthews, 432 F.3d at 1026, fn. 5, quoting Pace, 125 S.Ct. at 1814.  The Ninth Circuit declined to decide whether Pace had "lowered the bar somewhat" because the Ninth Circuit concluded that petitioner had met the "more demanding" articulation found in the Ninth Circuit case law. Id. at 1027.

        2. Petitioner is Not Entitled To Equitable Tolling For Prison Lockdowns.

Petitioner first contends that he is entitled to equitable tolling for periods of time comprising at least 38 days in which he was diverted from his normal prison routine because of a prison "lockdowns" between September 2, 2003 and February 26, 2004.  (Doc. 14, p. 4).  This contention is without merit.

In general, unpredictable lockdowns or library closures do not constitute extraordinary circumstances warranting equitable tolling. See United States v. Van Poyck, 980 F.Supp. 1108, 1111 (C.D. Cal.1997) (inability to secure copies of transcripts from court reporters and lockdowns at prison lasting several days and allegedly eliminating access to law library were not

extraordinary circumstances and did not equitably toll one-year statute of limitations). As in Van Poyck, Petitioner here has failed to demonstrate that the lockdowns he experienced and the resulting limited law library access substantially interfered with the entire year Petitioner had to file his petition. Petitioner's indigent status, his limited legal knowledge, and the difficulties and disruptions he encounters with sporadic prison lockdowns are conditions of prison life that are no different than those experienced by the vast majority of incarcerated prisoners attempting to file petitions for writ of habeas corpus. By definition, therefore, such circumstances in themselves are not extraordinary and do not justify equitable tolling. See Van Poyck, 980 F.Supp. at 1111 (brief security lockdowns cannot be characterized as "extraordinary circumstances"). Petitioner articulates no prejudice that inured uniquely to him as a result of the prison's lockdown policies nor does he establish a "but-for" causative relationship between the thirty-eight days he claims to have been under lockdown and his failure to file his petition in a timely manner. Thus, Petitioner has not met his burden of showing "extraordinary circumstances" entitling him to equitable tolling of the limitations period on this basis.

###3. General Principles Of Equitable Tolling On Grounds Of Mental Illness.

Petitioner also claims equitable tolling for the seven days he was on a "suicide watch." Mental incompetency may equitably toll the AEDPA's limitation period because mental incompetency is an extraordinary circumstance beyond a prisoner's control. See Calderon v. United States District Court (Kelly), 163 F.3d 530, 541 (9th Cir. 1998)(en banc); Allen, 255 F.3d at 801; Rhodes v. Senkowski, 82 F.Supp.2d 160, 169-70 (S.D.N.Y.2000) (prisoner must show that medical/mental problems rendered him unable to pursue his legal rights during relevant time period). A "putative habeas petitioner's mental incompetency [is] a condition that is, obviously, an extraordinary circumstance beyond the prisoner's control," so "mental incompetency justifies equitable tolling" of the AEDPA statute of limitations. Kelly, 163 F.3d at 541. The Ninth Circuit subsequently reaffirmed this rule, holding that a prisoner's allegation of mental incompetency in a verified pleading was sufficient to require the district court, as the Court has done in this case, to allow discovery or expansion of the factual record with respect to the issue of equitable tolling of the statute of limitations. Laws v. Lamarque, 351 F.3d 919 (9th Cir. 2003).

1   In determining whether the requisite "but-for" causation exists between the circumstances

2 alleged to be beyond Petitioner's control and his inability to timely file his federal petition, the

3 Court may consider, inter alia, the timing of the event.  For example, in <u>Allen</u> the Ninth Circuit

4 held that a prisoner was not entitled to equitable tolling for a 27-day period during which he was

5 being transferred between prisons and had no access to legal documents necessary to preparing

6 his petition, because the disruption occurred approximately one month into the one-year

7 limitation period, thus leaving petitioner ample time to file a timely petition:

> "It will normally be much more difficult for a prisoner to demonstrate causation where he encounters the 'extraordinary circumstances' in the beginning or middle of the limitations period than where he encounters them at the end of limitations period. This is the case because, if the prisoner is diligently pursuing his habeas petition, the one-year limitations period will ordinarily give him ample opportunity to overcome such early obstacles."
>
> ...
>
> Thus, the transfer began a mere one month into limitations period.  This left Allen with the better part of the limitations period in which he could have filed his federal petition uninhibited by the prison transfer.  It is clear that any effect the prison transfer had on the preparation of his habeas materials was dissipated during these many months.

<u>Allen</u>, 255 F.3d at 801; <u>Fisher v. Johnson</u>, 174 F.3d 710, 715-716 (5th Cir. 1999)(rejecting

equitable tolling claim because prisoner "still had over six months to complete his federal habeas

petition after his return to his usual quarters" and noting that, "[i]f this event had occurred shortly

before the required filing, Fisher would have a stronger case"); see <u>Lott</u>, 304 F.3d at 924 ("[w]e

can certainly hypothesize cases in which a pro se prisoner litigant had access to his legal files on

the days before his AEDPA limitation period expired, but earlier events had so disabled him as to

make a timely filing impossible....").

   Finally, in making the determination regarding equitable tolling, the Ninth Circuit has

cautioned district courts that "imposing extraordinarily high evidentiary standards on pro se

prisoner litigants–who have already faced an unusual obstacle beyond their control during the

AEDPA limitation period–runs against the grain of our...ruling...that 'affirmative measures are

sometimes required to ensure that a prisoner's access to the courts is adequate, effective, and

meaningful.'").  <u>Lott</u>, 304 F.3d at 924.

///

9

        4. <u>Petitioner Is Entitled To Equitable Tolling For Seven Days.</u>

Applying the foregoing principles to these facts, the Court finds that Petitioner has established that the seven day period during which he was under a suicide watch was an extraordinary circumstance beyond his control and that but for that circumstance, he would have timely filed his federal petition.

Petitioner's medical records indicate that at 9 p.m. on January 30, 2004, he was admitted to the prison's Correctional Treatment Center. (Doc. 26, p. 4; Doc. 14, Exh. A., p. 2). Petitioner was discharged from the facility at 5:50 p.m. on February 5, 2004. (<u>Id.</u>). Petitioner was admitted after he incurred three self-inflicted lacerations on the right side of the neck, requiring suturing, after Petitioner had an "argument with his cellie/lover." (Doc. 14, Exh. A, p.7). Petitioner was "admitted to the Mental Health Crisis Bed on a suicide watch." (<u>Id.</u> at p. 8). At the time he was admitted to the suicide watch, he told the admitting personnel that his roommate had broken off their relationship and that he had tried to kill himself because he had nothing else to live for. (<u>Id.</u> at p. 32). The report indicates that Petitioner was assigned to bed number 7, and that doctors ordered that Petitioner be issued paper clothing, that all sharp objects and furniture in the room be removed, that he be given two blankets and a mattress, that he should be fed a regular diet, and that he be evaluated by a medical doctor. (<u>Id.</u> at p. 28). The nursing care records indicate that Petitioner was monitored frequently by the nursing staff throughout his stay. (<u>Id.</u> at pp. 38-45).

Petitioner was diagnosed with "major depressive disorder" and "personality disorder," but showed "no homicidality and no overt psychotic symptoms" or delusions. (<u>Id.</u> at p. 8). Petitioner denied being suicidal and was later described by a treating physician as being "without active suicidality." (<u>Id.</u>; Doc. 14, Exh. A, p. 19). Petitioner had been on a medication called Paxil, the dosage for which was increased during and after his medical stay. (<u>Id.</u> at p. 7). The report indicates that the suicide watch was continued until February 3, 2004, and that when Petitioner was discharged on February 5, 2004, his condition was "improved." (<u>Id.</u>).

On February 3, 2004, the physician noted that Petitioner was eating and sleeping well, that he felt stress and anxiety regarding the status of his relationship with his cellmate upon his

10

discharge. (Id. at p. 23). On February 4, 2004, Petitioner was described as behaving appropriately, being lucid, and making good eye contact; the physician indicating he was "stabilizing" and showed "no evidence of suicidality." (Id. at p. 27). A note indicated the physician was considering discharging Petitioner the following day. (Id.). On February 5, 2004, Petitioner was discharged. (Id. at p. 25). The medical records indicate that at discharge, Dr. Pope was to be contacted regarding placing Petitioner on a five-day suicide "step-down." (Id. at p. 14). Later records indicate that Dr. Pope was contacted regarding the five-day step-down. (Id. at p. 25; p. 26).[4]

From the foregoing, it is apparent that, for a period of seven days shortly before the expiration of the one-year limitations period, Petitioner was isolated in a psychiatric unit within the prison, that he was deprived of his normal prison clothing, and that all sharp objects and furniture were removed from the room while at the same time he was constantly being monitored by medical staff. Although not expressly stated in the medical documents in the record, Petitioner asserts under oath and it is a reasonable inference to draw, that Petitioner had no access to his cell, his personal belongings, or his legal materials during that seven-day period. Moreover, Petitioner was suffering from a sutured wound to the neck, he was being treated for moderate depression, and he was sufficiently distraught over the dispute with his roommate that he initially felt he had nothing left to live for. The Court finds that the combination of emotional, physical and psychological difficulties Petitioner experienced during this period, his lack of access to his legal materials, and his confinement under a suicide watch in the final weeks of his one-year limitations period together constitute "extraordinary circumstances" beyond Petitioner's control.

The next question is to determine whether those extraordinary circumstances caused

---

[4] The medical records do not explain what restrictions, if any, were imposed on Petitioner during the five-day suicide step-down. However, in his objections to the report and recommendation of June 7, 2004, Petitioner declares, under penalty of perjury, that it involved being placed in a "confined-to-quarters" cell and that he was only out of this cell for the purposes of showering or talking to the prison psychiatrists. (Doc. 12, p. 4). As a result of this five-day procedure, Petitioner alleges he was not allowed repossession of his personal and legal property until February 9, 2004. (Id.). Because the Court's finding of equitable tolling from January 30, 2004 through February 5, 2004, makes the petition timely, it is unnecessary for the Court to make a specific finding regarding the impact, if any, on Petitioner of the step-down procedure itself.

Petitioner to file his petition beyond the one-year limitations period. Obviously, any such finding has to be based upon a consideration of all of the circumstances in evidence and must be case-specific. Of particular note here is the fact that, by all other indications, Petitioner exercised diligence: only seven days after the one-year limitation period had expired and only 20 days after being discharged from a suicide watch, Petitioner filed a cogent federal petition with an appended legal brief that appears to be a photocopy of arguments raised in his direct appeal in state court. (Doc. 1). The fact that he was able to do so suggests that Petitioner did not wait until the eleventh hour to do this, but had instead done preliminary work on his petition prior to his admittance to the medical unit.

Moreover, the timing of the incident in question, occurring very late in the one-year limitations period, has a greater tendency to establish prejudice than if it had occurred early on in the one-year period. <u>Allen</u>, 255 F.3d at 801. Here, the disruption occasioned by the suicide watch commenced just 20 days before the one-year period was to expire, and ended only 13 days before the limitations period expired. Although it is true that thereafter Petitioner had almost two weeks to file his Petition, the Court would be remiss in ignoring the psychological and emotional aftermath of Petitioner's medical treatment, which would have necessarily included the removal of the sutures, the effects of a heightened dosage of Paxil, a five-day "stepdown" from the suicide watch during which Petitioner's access to his personal belongings and legal materials was restricted, and, undoubtedly, some significant mental distraction resulting from all of the unusual and extraordinary events that occurred during Petitioner's time under the suicide watch. While these latter concerns might, by themselves, fall short of justifying equitable tolling, they nevertheless strongly suggest that when the suicide watch is considered in context, and not as an isolated event in the abstract, it would be unreasonable to expect that Petitioner, upon his discharge, could immediately turn to drafting his federal petition with all of the same mental and psychological facility he had prior to his medical confinement. Thus, while Petitioner may have had 13 days left to timely file the petition after his release, the Court finds that, considering all of the circumstances discussed above, his ability to productively use that time was significantly diminished.

Finally, the Court is mindful of the Ninth Circuit's admonition not to impose "extraordinarily high evidentiary standards on pro se prisoner litigants–who have already faced an unusual obstacle beyond their control during the AEDPA limitations period–runs against the grain of our...ruling...that 'affirmative measures are sometimes required to ensure that a prisoner's access to the courts is adequate, effective, and meaningful.'"). Lott, 304 F.3d at 924. Here, Petitioner has not relied upon generalized allegations of prejudice but has supplied the Court with voluminous information about the *specific* medical circumstances he experienced during the contested seven-day period. In the Court's view, this evidence supports a finding that equitable tolling should apply during that seven-day period.[5]

That being the finding of the Court, adding those seven days to the February 18, 2003 deadline results in a new AEDPA deadline of February 25, 2003. Pursuant to the "mailbox" rule, the instant petition was filed on February 25, 2003. Accordingly, the original petition was timely and therefore Respondent's Motion to Dismiss must be denied.

Moreover, because the Motion to Dismiss is denied, Respondent will be ordered to file an answer on the merits of the amended petition within 90 days.

## ORDER

Based on the foregoing, the Court HEREBY ORDERS as follows:

1. Respondent's Motion to Dismiss for a violation of the AEDPA's statute of limitations (Doc. 20), is DENIED.

2. Respondent SHALL FILE an ANSWER addressing the merits of the Petitioner's Petition within **NINETY (90)** days of the *date of service* of this order. Rule 4, Rules

---

[5] In so finding, the Court rejects Respondent's argument that Petitioner's "own behavior [ ] caused the delay...." (Doc. 20, p. 7). Respondent relies on Hizbullahankhamon v. Walker, 255 F.3d 65 (2d Cir. 2001 and Valverde v. Stinson, 224 F.3d 129 (2d Cir. 2000), both Second Circuit cases. The referenced footnote in Valverde simply points out the obvious, i.e., that a petitioner's own behavior may preclude him from equitable tolling. The specific example given by the Second Circuit was a petitioner who destroys his own petition the day before it is due. Valverde, 224 F.3d at 133 fn. 3. In Hizbullahankhamon, the court refused to find equitable tolling for a period when the petitioner was in solitary confinement as a result of his own misconduct. 255 F.3d at 67. However, medical treatment and confinement resulting from a temporary suicidal depression is qualitatively different from solitary confinement resulting from simple misconduct. If, as the record here indicates, Petitioner's behavior in slashing his neck was the result of a suicidal depression, such behavior is not, in the Court's view, "voluntary" in the same sense as the examples used by the Second Circuit and should not disqualify him from equitable tolling.

   Governing Section 2254 Cases; <u>Cluchette v. Rushen</u>, 770 F.2d 1469, 1473-1474 (9th Cir. 1985) (court has discretion to fix time for filing an Answer.).

3. Respondent SHALL INCLUDE with the Answer any and all transcripts or other documents necessary for the resolution of the issues presented in the Petitioner's Petition.  Rule 5 of the Rules Governing Section 2254 Cases.

4. Any argument by Respondent that Petitioner has procedurally defaulted a claim(s) SHALL BE MADE in an ANSWER that also addresses the merits of the claims asserted.  This is to enable the Court to determine whether Petitioner meets an exception to procedural default.  <u>See</u>, <u>Paradis v. Arave</u>, 130 F.3d 385, 396 (9th Cir. 1997) (Procedurally defaulted claims may be reviewed on the merits to serve the ends of justice); <u>Jones v. Delo</u>, 56 F.3d 878 (8th Cir. 1995) (the answer to the question that it is more likely than not that no reasonable juror fairly considering all the evidence, including the new evidence, would have found Petitioner guilty beyond a reasonable doubt necessarily requires a review of the merits).

5. Petitioner's TRAVERSE, if any, is due **THIRTY (30)** days from the date Respondent's Answer is filed with the Court.

6. The Clerk of the Court is DIRECTED to SERVE a copy of this order on the Attorney General or his representative.

All motions shall be submitted on the record and briefs filed without oral argument unless otherwise ordered by the Court.  Local Rule 78-230(h).  All provisions of Local Rule 11-110 are applicable to this order.

IT IS SO ORDERED.

Dated: **March 27, 2006**        /s/ Theresa A. Goldner
**j6eb3d**           UNITED STATES MAGISTRATE JUDGE